## F. B. HANDWERK, ASSIGNEE, ETC.,

v.

## JOSEPH OSWOOD AND AUSTIN OSWOOD.

*Sales—Sale and Delivery of Corn—Seller to Select Market Price on Some Future Day—Excessive Advances—Action to Recover Balance—Interest—Usage—Parol Evidence—Measure of Damages.*

In an action brought by an assignee to recover a balance claimed to be due the insolvent on account of excessive advances made by him on corn sold by the defendants, who were to select a market price on some day subsequent to the delivery, it is *held:* That the "tickets" issued on the delivery of the corn are not contracts; that parol evidence is admissible to show a mistake in gradi g the corn and that it was by a subsequent agreement rectified; that the plaintiff is not entitled to interest on said advances, interest not having been charged in former similar transactions between the parties; that the selection of a market price should have been made within a reasonable time; and that the defendants were properly credited by the court below with the net amount received for the corn by the vendee, plus the loss occasioned by his want of reasonable diligence and care.

[Opinion filed June 13, 1887.]

APPEAL from the Circuit Court of Grundy County; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. S. C. STOUGH, for appellant.

The agreement about fixing a price should receive a reason-able interpretation. It ought to be so construed as to give force and effect to the real intent and meaning of the parties at the time it was made. Will the court presume that either of the parties, at the time of making this arrangement, contemplated the possibility of no price ever being fixed? The law will tolerate no such inference, for that would destroy the contract and result in the perpetration of a fraud upon the agreement. The reasonable interpretation of this agreement is, that appellees not only might at some future day name a market price for this corn, but that they should do so, and that it should be done within a reasonable time. This is true

of all contracts where no particular time is mentioned within which they shall be performed, for the law, in its effort to be just, imposes this condition. Parsons on Conts.,Vol. 2, (7th Ed.) 794; Niemeyer v. Brooks, 44 Ill. 77; Smith v. Gear, 59 Ill. 381; Wells v. Carpenter, 65 Ill. 447.

What is and what is not a reasonable time depends upon the particular circumstances of each case, and is a question of law for the court. Parsons on Contracts, Vol. 2, (7th Ed.) 794.

In all cases the period of time ought to be such as will preserve the mutuality of the contract and conserve the rights of both parties.

In no case should that be held to be a reasonable time which would be likely to withdraw all advantage of the contract from one party, and extend it to the other. Neither should such a period of time be adopted as might entail great loss upon one, and totally exempt the other from all hazard.

Messrs. Bull, Strawn & Ruger, for appellees.

The bringing of this suit was the termination of the option by the appellant. If a reasonable time had elapsed, and he had made a demand on appellees, which was refused, he then had a right to declare the option closed. This he never did. But he brought suit, and the courts hold that to be a sufficient declaration in such cases. This we believe to be reasonable and a logical solution of the law as applicable to this case. We have been unable to find any authority directly in point, and counsel for appel'ant cite us to none; but the following cases lay down the general legal proposition that, where either party to a contract seeks to put the other in default, he must not only be ready and willing to perform his part, but he must tender performance at the time and demand performance from the other. Hubbell v. Von Schœning, 49 N. Y. 326; Hapgood v. Shaw, 105 Mass. 276; Bank v. Hagner, 1 Pet. 455, 465; Nelson v. P. F. E. Co., 55 N. Y. 480; Turner v. Mellier, 59 Mo. 526; Lyon v. Culbertson, 83 Ill. 33; Doggett v. Brown, 28 Ill. 493.

Baker, P. J. This suit was brought by Handwerk, as

assignee of McEwen, against Joseph and Austin Oswood, for moneys claimed to be due upon a book account. The demand, with the exception of a small item of $13.05 for lumber, is for the recovery of cash advances made by the insolvent prior to his assignment, upon corn delivered by them to him. There was a trial in the Circuit Court, without a jury, and the assignee recovered judgment for $239.65, but not being content with the amount of the damages assessed, he took this appeal; and in this court various errors and cross-errors are assigned by the respective parties to the controversy.

In 1883, McEwen was engaged in the grain business at Morris, and between the 8th day of September and 14th day of November, of that year, appellees hauled from their farm and delivered to him 4,352 bushels of shelled corn of the crop of 1882, under an agreement that they should be allowed to come in at some future day and select a market price at which the corn should be settled for. The transaction was a sale and not a mere bailment, and the title to the property vested in McEwen, and all that remained to be done was for appellees to fix the price of the grain under the option given them, by designating on some future day, the market price of that day as their selection. Lonergan v. Stewart, 55 Ill. 44; Ives v. Hartley, 51 Ill. 520; McEwen v. Morey, 60 Ill. 32.

It was contended by appellees upon the trial that 1,688 bushels of this corn was accepted as "rejected corn," and the residue as "No. 2" corn. The tickets that were issued upon the delivery of the corn would indicate that a larger proportion of it was inspected as "rejected." The Oswoods testified that the first four loads hauled were graded by McEwen, against their protests, as "rejected," and so marked on the ticket; that thereupon they began hauling their corn to Pensca, where it was graded "No. 2," and McEwen then agreed if they would sell their corn to him, he would take all their good corn, including the four loads previously marked "rejected," as "No. 2" corn; and further that certain loads of corn afterward hauled for them by their neighbors, and designated on the tickets as "rejected," were in fact a part of the good corn, and that they spoke to McEwen about it, and he

said he would make it "No. 2." This testimony was objected to on the ground it was incompetent, because it tended to contradict the written grain tickets. These so-called "tickets" are not written contracts; they are mere memoranda made by the clerk of the amounts and quality of the corn hauled. With the exception of the ticket given at the first delivery, they are signed by no one. With respect to the ticket signed by McEwen, it was entirely competent to show by parol that he agreed, in consideration that they would haul the rest of their corn to him, to accept the four loads already delivered, as "No. 2," notwithstanding they had been marked "rejected" on the memoranda signed by him. And so, if the corn hauled by the neighbors had by mistake been designated as "rejected" on the memoranda given them by the clerk, no good reason is perceived why McEwen could not verbally agree upon his attention being called to the matter, that such mistakes should be rectified, or why such agreement might not be shown by parol testimony. We see no error in the ruling of the court admitting this evidence.

It is admitted that appellees should be credited, in addition to the corn hauled from their farms, with 493 bushels and eight pounds, known as the "Faxwell corn," which had been hauled by one Faxwell, and stored in one of McEwen's cribs, and was on March 31, 1883, sold by Faxwell to them. On the same day, appellees sold this corn to McEwen, and a preponderance of the evidence shows that he agreed to take it as "No. 2" corn.

There is much conflict in the testimony with reference to the ownership of what is known as the "Jacobson" corn. Between the 2d day of January and the 2d day of February, 1883, one John Jacobson stored in the warehouse of O. J. Nelson & Company, grain dealers, adjoining the premises of McEwen, 849 bushels and fifty-five pounds of corn; it was not sold to Nelson & Company, for the reason Jacobson wanted 50 cents a bushel for it, and they considered it worth only 47 cents per bushel.

On the 16th of March following, appellees bought this corn from Jacobson at 50 cents per bushel; and they claim that

on the same day and before purchasing it they called upon McEwen and he agreed to take the corn from them as "No. 2" corn, and give them the right to fix the price, when the market suited, and directed them to go over and tell O. J. Nelson & Company that the corn belonged to him. In view of the testimony of appellees and their brother and of Nelson, we are unable to say that the finding of the trial court that this corn was sold to McEwen was against the weight of the evidence.

During 1883, the Oswoods drew from McEwen, in money, $2,630, and got from him lumber to the amount of $13.05, making $2,643.05 in all. Appellant claims that he is entitled to interest upon this sum, and urges that for almost twenty years it has been the general custom of the grain trade in Morris to charge interest upon advances made on corn, and that persons dealing in any particular market will be taken to deal according to the known, general and uniform custom of that market. It would seem that where advances are made by a warehouseman on corn stored, or by the shipper to the owner on corn shipped for account of the owner, interest on such advances might, with propriety, be charged; but it hardly appears proper where corn is sold, and the vendee is vested with both possession and title, that interest should be allowed upon moneys paid by the vendee to the vendor on account of such corn. Such moneys would be regarded as payments on the property sold and delivered and not as loans.

But it is a sufficient answer to this claim of appellant to say that he is not entitled to interest in this case by virtue of the grain trade usage in Morris, for the reason that the evidence shows that appellees, prior to the transactions here involved, had similar transactions with McEwen, and that in such prior transactions he did not charge them interest, and it must be presumed that these last deals between the parties were understood to be upon the same terms.

The evidence shows that the corn crop of 1882 was of low grade and poor quality; and also that the inclination of the corn market from March, 1883, down to and until the date of the trial of this cause, was downward. On February 4, 1884,

McEwen became insolvent and made an assignment for the benefit of his creditors.   Appellees had not at that date designated a market price at which the corn should be settled for, nor did they assume, after the appointment of the assignee, to make such selection.   The agreement with reference to fixing a market price should receive a reasonab'e interpretation.   It surely was not intended by the parties that appellees should have all future time in which to make their selection of a market price, or that they should have the privilege of looking back over the fluctuations of the corn market and making a retrospective choice.

The reasonable construction of the contract is that appellees should make a selection of a market price within a reasonable time, and that if they did not do so, then McEwen should have the right to notify them to fix the day, and in case of their refusal to comply with their duty in this regard, he should promptly fix the day himself and give them notice. In this case appellees did not exercise their option within a reasonable time, or at any time; and, on the other hand, neither McEwen nor his assignee demanded that they should fix the price, or assumed to select the day and give appellees notice of such selection.   McEwen was apparently content to let the matter run; the tendency of the corn market was downward, and he probably supposed it was for his interest that the transaction should not be closed up.   In this matter, in our opinion, both parties were in fault.

An important question in the case is in respect to the rule that should be applied in ascertaining the damages which appellees are entitled to in their cross-action for the price of the corn.   We have already remarked that owing to the default of both parties, no price has been fixed under the terms of the contract.   The appellant asked the court to hold, as a proposition of law, that all that the appellees were entitled to be credited with, for the corn in this suit, was what such corn netted McEwen upon the sale thereof, provided said McEwen was reasonably diligent and prudent in seeking to obtain the highest market price therefor.

But the court declined to hold said proposition to be the

law in this case, and qualified the same by adding thereto the words, " and took reasonable and prudent care of such corn."

Complaint is made by appellant that this qualification was unwarranted by any evidence in the case. As we understand the testimony, with reference to the Jacobson corn, it was amply sufficient to justify the addition made by the court to the proposition. Appellant also urges that the finding and judgment were for $217.47 less than they should have been under the proposition held by the court. That matter depends very much upon the view taken of the testimony. As qualified and held by the court, the proposition made McEwen liable for all losses sustained on account of a failure on his part to exercise reasonable prudence and diligence in seeking to obtain the highest market price for the corn, or occasioned by a want of reasonable and prudent care of the corn. In view of the evidence with reference to the Jacobson corn, out of which only 28 cents per bushel was eventually realized, we are not prepared to say that the trial court was in error in assessing the damages of appellant at on'y $239.65.

In the absence of all authority upon the subject, we are inclined to think that the Circuit Court adopted the just, equitable and proper rule in assessing the damages that appellees were entitled to set off or recoup upon their counter-claim for corn, i. e., the net amount received for the corn by the vendee plus the loss occasioned by his want of reasonable diligence and care.

In the view we have taken of the case, it is unnecessary to consider the cross-errors; that which we have said sufficiently indicates our opinion that they are not well assigned.

The judgment is affirmed.

*Judgment affirmed.*