JOSEPH G. SNYDACKER *et al.*

*v.*

MELBOURNE E. BLATCHLEY *et al.*

</div>

*Opinion filed December 21, 1898—Rehearing denied February 14, 1899.*

1. CONVEYANCES—*effect of instrument is not determined from its name.* The legal effect to be given an instrument is not to be determined from the name the parties have given it, but from its terms.

2. SAME—*grain receipt construed as a conveyance having the effect of a mortgage.* An instrument denominated a grain receipt, the opening sentence of which would constitute a sale of certain wheat, but which is followed by express declarations that the transfer of title is by way of mortgage to secure an advance of money, is a conveyance having the effect of a mortgage, within the meaning of the statute, and is not valid as against third parties, in the absence of acknowledgment or recording or change of possession.

3. MORTGAGES—*mortgage will not operate on subsequently acquired property unless so stipulated.* A chattel mortgagee will not be allowed

an equitable interest in property subsequently acquired by the mortgagor, in the absence of any provision to that effect in the instrument creating the lien.

4. WAREHOUSES—*when party is keeper of public warehouse of class B.* One engaged in buying and shipping grain, and also in storing grain for others in elevators situated in a city having less than 100,000 inhabitants, is the keeper of a public warehouse of class B, within meaning of section 2 of the Warehouse act. (Rev. Stat. 1874, p. 820.)

5. SAME—*when grain receipts evidence a bailment and not a sale.* Receipts for grain delivered to a public warehouseman by the owners for the double purpose of holding it for better prices and to get it removed from their farms while the roads were good, evidence a bailment and not a sale, whether the grain is kept separate or not.

6. SAME—*mixing grain does not change relation of warehouseman from bailee to debtor.* The mixing of grain of different owners by a public warehouseman does not destroy the character of the transaction as a bailment, as the warehouseman is custodian, merely, charged with the duty of delivering the quantity and quality of the grain deposited, and is not a debtor for the value of the grain.

*Snydacker* v. *Blatchley*, 72 Ill. App. 519, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the County Court of Greene county; the Hon. JOHN C. BOWMAN, Judge, presiding.

COLIN C. H. FYFFE, for appellants.

THOMAS HENSHAW, for appellees E. V. Baldwin, L. P. Griswold, S. N. Griswold and S. P. McCracken.

MARK MEYERSTEIN, for appellee F. R. Stubblefield.

Mr. JUSTICE BOGGS delivered the opinion of the court:

M. E. Blatchley, in the year 1895 and for some years prior thereto, was engaged in Whitehall, Illinois, in the business of operating a flouring mill and buying and shipping grain, and also in storing grain for others in certain elevators owned or operated by him. He owned or had control of a flouring mill and two elevators. The appellants, during the same period of time, were doing business as grain merchants in Chicago. On October 12, 1895,

Blatchley applied to appellants for a loan of $3000, to be used in the purchase of wheat. Appellants consented to make the loan. Blatchley gave them two notes, one for $1700, due in three months, the other for $1300, due in four months, each bearing seven per cent interest. He then had a quantity of wheat in his elevators,—6000 bushels, as he represented to appellants,—and executed and delivered to appellants an instrument in writing which they insist should be construed to be the "receipt of the keeper of a public warehouse of class B." The notes given by Blatchley were renewed by other notes and then again likewise renewed, the last renewal of the $1700 note being on June 24, 1896, and the $1300 note on July 14, 1896. On the 30th day of July, 1896, Blatchley made a voluntary assignment, and appellee Stubblefield, his assignee, received 3461 bushels of wheat as the property of the insolvent. Appellants exhibited to the court in which the said assignment was pending, their petition praying for an order directing the assignee to deliver the wheat in his hands to them by virtue of the said written instrument denominated by them a public warehouse receipt. The prayer of the petition was denied, and the Appellate Court for the Third District affirmed the action of the county court, and appellants have prosecuted a further appeal to this court.

The instrument by virtue whereof appellants claim the ownership of the wheat in question is as follows:

"GRAIN RECEIPT.

"6000 bushels.                                    *October 12, 1895.*

"I have this day conveyed and delivered unto the possession of Snydacker, Fyffe & Co., of Chicago, Illinois, 6000 bushels of wheat, stored in good covered cribs, numbered ...., elevator ...., and located on lots numbered ............, belonging to M. E. Blatchley and situate in the town of Whitehall, county of Greene, State of Illinois, each of said cribs being marked with the name............ The above mentioned wheat is free from all claims and encumbrances except those due Snydacker, Fyffe & Co., and this conveyance is made by way of mortgage, to secure the said Snydacker, Fyffe & Co. for their advances and

interest on the same at seven per cent per annum until paid, and commission of no less than one-half cent per bushel, and insurance at least to the amount of their advances............
I agree, upon the request of said Snydacker, Fyffe & Co., to procure the said wheat to be shelled and shipped, consigned to them or their order, as may be directed by them, at my cost and expense, and I guarantee the quality to hold out as stated.

"Said Snydacker, Fyffe & Co. may sell said wheat in Chicago or elsewhere, and from the proceeds of such sales pay first the freight, inspection, insurance and interest on their advances, and their commission for selling the said wheat, and all expenses incurred on account of said............; second, their advances on said wheat and all sums owing them by me, so far as the balance of proceeds will go, and account to me for balance of proceeds, if any. If the net proceeds of sale of said wheat do not amount to a sufficient sum to pay Snydacker, Fyffe & Co. the charges, advances, interest and commission as aforesaid, I agree to pay such deficiency to them on demand.

"The said Snydacker, Fyffe & Co. may, at any and all times, deal with said wheat, and any and every part thereof, in all respects as their own, accounting to me only for the net proceeds.

"The receipt, if assigned by endorsement in blank, or otherwise, on the back thereof, will at once vest the holder with full title and ownership in the property mentioned, with all power herein contained, the same as if issued to the assignee or subsequent holder, subject only to a return of whatever the net proceeds may exceed the holder's claim.
No....                                M. E. BLATCHLEY."

The opening sentence of the instrument would constitute a sale of the wheat to appellants, but it is followed by an express declaration the transfer of title is only by way of a mortgage to secure the indebtedness due appellants. Then follows the agreement that Blatchley, upon request of appellants, shall ship and consign the wheat to appellants, and that they shall be authorized to sell the wheat in Chicago or elsewhere, and apply the net proceeds of the sale of the grain to the payment of their demands against Blatchley, and if such proceeds do not discharge such demand Blatchley shall pay the remainder, and if the amount produced by the sale exceeds the amount due appellants they shall account to Blatchley

therefor. It is true, the instrument is denominated a receipt in its concluding sentence; but the legal effect to be given it is not to be determined from the name the party may have chosen to adopt, but from its terms, conditions and provisions. Judged by the facts disclosed by the evidence, or by the legal effect of the instrument executed by the parties, the transaction was not a sale or a transfer of title by means of a warehouse receipt, but merely an attempt to create a lien on the wheat then in the elevator and belonging to Blatchley, to secure the payment of a loan of money to be made by appellants to him. The instrument is a "conveyance of personal property having the effect of a mortgage," within the meaning of those words as employed in section 1 of chapter 95 of the Revised Statutes, entitled "Mortgages." Not having been acknowledged and recorded, as required by the provisions of subsequent sections of that chapter of the statute, and the possession of the property to be affected by it not having been delivered to appellants, the conveyance was without validity as against the rights and interests of third persons. As between the parties it created a lawful lien upon the identical grain covered by the writing. Whether such an instrument is good and effectual as against the assignee of an insolvent debtor need not be here considered, for the reason it was conclusively proven the wheat in the elevator when the mortgage was executed, and upon which it attached as between the parties, had been removed therefrom and disposed of by the debtor prior to the assignment and did not come to the hands of the assignee. Had appellants held a mortgage executed and acknowledged in strict conformity with the statute it would have availed them nothing, for the reason the assignee had not the property to which it attached. The instrument does not profess to operate upon any grain other than that then owned by Blatchley and then in his possession. Equitable interests in property subsequently acquired by a mortgagor are never

declared except where the intent to bind after-acquired property is clearly expressed in the mortgage or writing relied upon to create the lien. *Borden* v. *Croak*, 131 Ill. 68.

The county court held appellants had no preference or lien, legal or equitable, in or to the wheat which was in the elevator at the time the assignment was made. This holding was correct, and its affirmance by the Appellate Court is affirmed.

Appellees Baldwin, Loyal P. and Seth N. Griswold and McCracken had deposited wheat in the elevator operated by Blatchley. They held receipts therefor and petitioned the county court to hold such receipts to be public warehouse receipts, and to order the assignee to deliver the grain to them according to the tenor of the receipts by them respectively held. This view of the rights of these appellees was accepted, and as the assignee had sold the grain, an order was entered applying the proceeds of such sales to the satisfaction of the demands of the holders of such receipts. Appellants saved exceptions to such holding of the court, and the Appellate Court having affirmed the order of the county court they perfected an appeal to this court to bring the judgment of the Appellate Court in review here.

Appellants claim Blatchley was the keeper of a public warehouse of class B, within the meaning of section 1 of article 13 of the constitution of 1870, and of the statute enacted in pursuance of such constitutional provision. That position is, we think, correct. But we do not agree with the contention of the appellants that said appellees sold their wheat to Blatchley and were simply contract creditors of the insolvent debtor. It appeared in the proofs the purpose of the appellees in delivering the wheat to the elevator was two-fold: First, to hold the grain for better prices than were then current; and second, to remove the wheat from the farms where it had been produced, to a shipping point, while the roads were dry and solid. No doubt they expected to sell their grain

to Blatchley, and no less doubt he expected to buy it when they concluded to accept the market price; but there was no contract they would do so, and they were entirely free to accept prices from and sell to other dealers. It was the custom of Blatchley to mix the wheat of different owners if of the same grade, and this appellees knew. It was not expected by them that if they did not sell to him he would return to them, or deliver to any one to whom they should sell, the identical wheat they had stored with him, but they were entitled to demand and have grain in the same quantity and of like quality. The general doctrine, frequently announced, that in order to constitute a bailment the obligation must be to restore the identical thing which was delivered, and that where the obligation of the receiver is to return another thing of equal value such receiver becomes a debtor to make such return and the transaction is a sale, has no application when the receiver comes into the possession in the capacity of a keeper of a public warehouse, within the purview of the constitution and statutes upon that subject. Article 13 of the constitution, entitled "Warehouses," and section 2 of the act of the General Assembly enacted to give effect to the constitutional requirement, in force July 1, 1871, (Hurd's Stat. 1897, par. 135, chap. 114,) contemplated that grain deposited in public warehouses by different owners will not be kept separate and that the holders of receipts issued by the proprietors of such warehouses will not receive the same grain they put in storage, and secures to the owners of such receipts the title and right to a like quantity of other grain equal in value. The proprietors of such warehouses do not become debtors to make return of the identical grain deposited, and therefore debtors for the value of the grain, but custodians charged with the obligation to restore in quality and quantity.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*