### CHARLES J. YOCKEY

*v.*

### CHARLES P. SMITH.

*Opinion filed October 19, 1899.*

1. WAREHOUSES—*warehouseman has no property in stored grain that is subject to levy.* The proprietor of a warehouse in which grain is stored for a compensation has no property in the grain that can be levied upon under execution against him, as he is not the debtor of the owners of the grain, although it is intermingled in common bins, but is a custodian charged with the duty to restore, in quantity and quality, such grain as he may receive.

2. SAME—*title to grain merely stored in private warehouse does not pass to warehouseman.* The title to grain placed in a warehouse, whether public or private, does not pass to the proprietor of the warehouse, when he agrees to hold it for the owner and subject to his order.

3. TROVER—*trover may be maintained against officer for conversion of goods taken on execution.* One who is the owner of property and entitled to its possession may, after demand, maintain trover for its conversion against an officer who levied upon it under an execution against a third person.

*Yockey* v. *Smith,* 81 Ill. App. 556, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. H. M. TRIMBLE, Judge, presiding.

This was an action of replevin, brought by appellee, against appellant, to recover the possession of 4955 bushels of corn and 211 bushels of oats which had been stored

by appellee in the elevators of Robert T. Harrington, at
Marseilles, Illinois, and which had been levied upon and
seized by appellant, as sheriff, under an execution against
Harrington.

The declaration contained counts in the *cepit* and *deti-
net*, and, the grain not having been found, there was a
count in trover.   Appellant pleaded *non cepit, non detinet*,
not guilty and property in Robert T. Harrington, and
·also a special plea justifying the taking and detention
by virtue of an execution against Robert T. Harrington
in favor of the First National Bank of Marseilles, Illi-
nois, and alleging the property of the grain to be in Har- ·
rington and not in plaintiff.   Issues were joined on these
pleas and a traverse of the special plea.   The cause was
tried by a jury, who returned a verdict finding appel-
lant guilty and assessing appellee's damages at $1241.06.
The court overruled a motion for a new trial and entered
judgment on the verdict, which, on appeal, was affirmed
in the Appellate Court.

WIDMER & WIDMER, (HENRY MAYO, and BUTTERS,
CARR & GLEIM, of counsel,) for appellant.

CHARLES S. CULLEN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It appears from the testimony introduced on the trial
that Harrington was a grain dealer at Marseilles.   He
bought, shipped and sold grain on his own account and
received grain in store from farmers in his elevators.
He operated two elevators, one known as the "Harring-
ton" or "Railroad elevator" and the other as the "Schroe-
der elevator."   Appellee, being the owner of about 3000
bushels of oats and 5000 bushels of corn, hauled and
stored it in the elevators operated by Harrington, under
an agreement, as the evidence tends to show and as the
Appellate Court found, that it was to remain his grain,

subject to his own order, until such time as he saw fit to sell, but the agreement provided that appellee should pay one-quarter of a cent per bushel per month after the first day of November, if left until that time. The grain was delivered from time to time, commencing in June and ending September 29, 1897. In July 2700 bushels of the oats were sold to Harrington, but the balance of the grain remained in store. The execution upon which appellant seized the grain came into his hands on October 1, 1897, and was levied the next day. The property was sold and the proceeds applied in satisfaction of the execution and other executions which appellant had received against Harrington October 1 and 2, 1897.

Under the facts the question presented is whether the grain in question was the property of Harrington, and, as such, liable to be taken and sold under execution against him, or whether it was the property of appellee.

Section 1 of article 13 of the constitution declares: "All elevators or storehouses where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses." The Appellate Court found as a fact that the grain in question was stored under a contract, under which appellee was to pay, as compensation for storage, a certain amount per bushel after November 1, 1897, and this finding, in connection with the evidence showing the time and manner in which Harrington had been engaged in the grain and warehouse business, establishes as a fact that the warehouses kept by Harrington were public warehouses, within the meaning of the constitution and the statute of July 1, 1871, (Hurd's Stat. 1897, chap. 114,) and that the grain of appellee was received by Harrington as a public warehouseman. If Harrington received the grain as a public warehouseman the title to the property did not pass to him but remained in appellee, and it could not be taken and sold for Harrington's debts. In *German Nat. Bank* v. *Meadowcroft,* 95 Ill. 124, where a simi-

lar question was involved, it was held that where grain is consigned to a public warehouse and is there stored in bins, mingled with other grain of like character and grade belonging to different persons, so that its identity is lost, upon the refusal of the warehouseman to deliver, upon the presentation of the proper warehouse receipts, the quantity of grain and of the grade called for by such receipts, the holder of the receipts may maintain trover for the recovery of damages. It was also held that if the warehouse and grain are transferred, the person to whom the transfer was made would in like manner be liable to the parties who had stored the grain. In *Snydacker* v. *Blatchley*, 177 Ill. 506, it was held that one engaged in buying and shipping grain, and also in storing grain for others in elevators situated in a city having less than 100,000 inhabitants, is the keeper of a public warehouse of class B, within the meaning of section 2 of the Warehouse act. (Rev. Stat. 1874, p. 820.) It was also held that receipts for grain delivered to a public warehouseman by the owners evidence a bailment, and not a sale, whether the grain is kept separate or not.

The rule adopted in the cases cited may properly be applied here. We think it is plain that the proprietors of public warehouses, such as were kept by Harrington, do not become debtors of the owners of the grain stored, but, on the other hand, they are custodians, charged with the duty to restore, in quantity and quality, such grain as they may receive. This rule is demanded for the safety and security of those who entrust their grain to the keeping of persons engaged in the public business of warehousemen.

It is, however, claimed in the argument that instructions 7, 8, 10 and 11 given for the plaintiff authorized recovery in behalf of the plaintiff on the supposition that Harrington was doing business as a private warehouseman. We do not so understand the instructions. No. 8 merely declares, in substance, that, if the jury believe,

from the evidence, that plaintiff was the owner of the property in question and entitled to the possession thereof at the time of the commencement of the suit, and that defendant was guilty of wrongfully detaining the same after demand, then the plaintiff was entitled to recover. No. 10, in substance, directed the jury that if they found, from the evidence, that the grain in question was the property of plaintiff and that he was entitled to the possession, and that the defendant levied upon and took possession under an execution against Harrington, and that he had sold the property without the consent of plaintiff, this would amount to a conversion and plaintiff would be entitled to recover. The eleventh declared, in substance, that although the jury might believe, from the evidence, that the sheriff lawfully came into the possession of the property, yet if they find that plaintiff was the owner and entitled to the possession, and before the commencement of the suit made a demand for the possession of the property and defendant refused to deliver the same but afterwards sold the property, this would amount to a conversion. As to the three instructions, we fail to see wherein they lay down an incorrect rule of law or one calculated to mislead the jury in arriving at a correct decision of the questions submitted for their determination.

As to the seventh instruction, the jury were, in substance, directed, that if they believed, from the evidence, that plaintiff delivered in the warehouses of Harrington certain grain described in the declaration, and that the grain was delivered under an agreement between plaintiff and Harrington that the grain was to be held by Harrington upon storage as in a public warehouse, or, if said warehouses were not public warehouses, then that the agreement was that the ownership of the said grain should remain in plaintiff and should be subject to his order and control until such time as he should see fit to sell, "and that at the time of the levy of the execution

by the defendant said Harrington had on hand in said warehouses said grain, or grain of like character and grade equal to or exceeding the amount of grain delivered by the plaintiff, which said Harrington was holding for said plaintiff under said agreement, and that said defendant levied upon and took said grain upon an execution in favor of the First National Bank of Marseilles and against said Harrington, and sold or otherwise disposed of the same so as to deprive the plaintiff of the same without the consent of the plaintiff, then the jury should find for the plaintiff."

While we do not regard this instruction as a model, we do not regard it liable to the objection urged against it. The first part of the instruction relates to public warehouses, and no fault is found with that portion of it; but that part of the instruction after the word "or," it is claimed, authorizes a recovery although the grain of the plaintiff was stored in private warehouses. This, as we think, is a misapprehension of the terms of the instruction. The instruction, as we understand it, predicates the right of recovery on the theory that there was a contract between the parties under which the grain was stored, and under which the ownership of the grain should remain in plaintiff and be subject to his order and control, and at the time of the levy Harrington had on hand plaintiff's grain which he was holding for the plaintiff. If grain was placed in the warehouse under a contract that it was to be held for the plaintiff, subject to his order and control, and it was so held, it could make no difference what kind of a warehouse it was in. As no title could pass under such an arrangement, a creditor of Harrington would have no right to seize and sell the property for Harrington's debts.

We find no substantial error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*