## A. MAYER

*v.*

## J. W. SPRINGER.

*Opinion filed October 24, 1901.*

1. TRIAL—*duty of court in giving instructions.* It is the duty of the court to give to the jury, in its instructions, rules of law which are applicable to the evidence in the case, and to make the application so that the jury may understand the relation of the rules to the evidence.

2. WAREHOUSES—*public warehouses defined.* Public warehouses are those which receive grain or property in store for the public for compensation; and if that business is not carried on, isolated instances of receiving property for storage will not convert a mill, store, barn or granary into a public warehouse.

3. SAME—*what does not tend to prove keeping of a public warehouse.* Evidence that the owner of a mill received grain under an option to purchase it, and that he subsequently purchased part of it and ground it into flour, does not tend to prove that the mill was a public warehouse, nor justify an instruction as to the classes of public warehouses and the liability of keepers of such in case of fire.

4. BAILMENTS—*liability of owner of mill who receives wheat in storage.* A mill owner who receives wheat under an agreement to purchase the same when the owner is ready to sell, or to re-deliver it to such owner, is bound to keep the wheat in the condition in which it was received until demanded; and if he makes the same into flour, as his own property, he is liable for the value of the grain.

5. SAME—*effect where mill owner is authorized to mix and grind stored wheat.* If a mill owner receives wheat for storage under an agreement that he may mix it with his own and grind or dispose of it, keeping an equal quantity of wheat of the same grade for the owner, the question, in case of the destruction of the mill by fire, is whether the mill owner kept the requisite amount of wheat on hand of the same grade, and whether he used proper care for its safety and for the prevention of fire.

*Mayer* v. *Springer*, 95 Ill. App. 173, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of White county; the Hon. P. A. PEARCE, Judge, presiding.

PARSONS & HANLON, J. E. BARTLEY, and ROSS GRAHAM, for appellant.

PARISH & PARISH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee, J. W. Springer, owned and operated the Riverside Mills, in the city of Shawneetown. Appellant, A. Mayer, had wheat which he was not ready to sell at the time and which appellee wanted to buy whenever appellant was ready to sell it. They made an agreement by which appellee was to store the wheat in his mill without charge and was to have the option to buy it when appellant was ready to sell, provided he would pay as much as any one else. Under this agreement appellant stored wheat in the mill, taking the following receipt:

"SHAWNEETOWN, ILL., *Aug. 19, 1898.*

"Received of A. Mayer (2142) twenty-one hundred forty-two bushels and twenty-five pounds of No. 2 red wheat, to be held in storage for him (A. Mayer) in the Riverside Mills.

J. W. SPRINGER & CO.,   .
By J. M. WHITE."

Afterward appellant delivered other wheat for storage under the same agreement, taking the following receipt:

"SHAWNEETOWN, ILL., *Sept. 24, 1898.*

"Received of Mr. A. Mayer the following lots of wheat: 789 46-60 bushels of wheat, testing 56 lbs.; 164 46-60 bushels of wheat, testing 55½ lbs.; 151 bushels of wheat, testing 50½ lbs.

J. W. SPRINGER & CO.,
w."

In January, 1899, appellant sold to appellee 1000 bushels of the wheat so stored, at seventy cents per bushel. In the summer of 1899 appellant made a further deposit for storage in the mill of 498 bushels and twelve pounds, under the same agreement, but took no receipt therefor. In July, 1899, he sold to appellee 380 bushels of the wheat stored in 1899, at sixty-five cents per bushel. The whole amount of wheat stored was 3745 bushels and forty-four pounds. The total amount sold to appellee was 1380 bushels, leaving in store 2365 bushels and forty-four pounds. In August, 1899, the mill, with its contents,

was burned. Appellant brought this suit to recover for the wheat that had not been sold to appellee before the fire.

The declaration contained four counts. The first was the consolidated common count. The second averred the delivery of the wheat under an agreement by which it was to be safely kept until demanded, and upon demand to be either re-delivered to plaintiff or paid for at the market price, and alleged that defendant disposed of a large part of the wheat and caused the remainder to be mixed with other wheat without the consent of plaintiff, and thereby converted said wheat to his own use, and although requested to pay for said wheat or re-deliver the same, neglected and refused so to do. The third averred the delivery of the wheat to be securely kept and re-delivered to the plaintiff, and charged negligence, generally, in the care of the same, whereby it was lost to the plaintiff. The fourth averred that in consideration of the care and custody of the property and an option given by the plaintiff to the defendant to purchase the same at such time as the plaintiff should desire to sell, the defendant undertook to take due and proper care of the same, and took so little care that the property was lost. The defendant pleaded the general issue, and upon a trial there was a verdict in his favor and judgment on the verdict, which, on appeal, was affirmed by the Appellate Court.

At the trial, the facts already stated were proved and were not in dispute. The defense made was, that under the agreement the defendant could grind the wheat or use and dispose of it and return to the plaintiff an equal quantity of other wheat of the same grade; that the wheat was stored at plaintiff's risk, and that at the time the mill was burned defendant had an amount of wheat in the mill in store, subject to plaintiff's order, equal in quantity and quality to what was remaining of plaintiff's wheat under the contract of storage. It is argued that

oral evidence to sustain this defense was not admissible under the general issue, but that a special plea was required, or the general issue, with notice of the defense. There was no objection to the evidence complained of, and there is no assignment of error that the court erred in the admission of evidence. Argument on that subject not being based on an assignment of error will not be considered.

Defendant claimed that the wheat was in store at the plaintiff's risk, and that he was not guilty of negligence or responsible for any loss by the fire. In November, 1898, plaintiff was notified that there was weevil in the wheat deposited in that year. The evidence for defendant was, that plaintiff then wanted to know if defendant could re-clean the wheat or do something with it, and said for defendant to go ahead and do the best he could with the wheat, and that the effect of the agreement was that defendant might grind the wheat or use it and return an equal amount of other wheat of the same grade to the plaintiff. Plaintiff denied any agreement that defendant might deliver him other wheat, and an agent of the plaintiff testified that when there was notice that weevil was in the wheat he went to the mill and found that the wheat was not there, and was told that it had been ground and shipped out. Defendant mixed the wheat with his own wheat and afterward ground at least a part of it. The evidence on the part of the defendant was that there was more than enough wheat in the mill at the time of the fire to meet plaintiff's demand, and of the same grade. The evidence on the part of the plaintiff was that there was no more than 300 bushels of wheat destroyed by fire. The questions in controversy between the parties were whether the defendant had converted to his own use the wheat of the plaintiff by grinding and otherwise disposing of it, so that the title to the wheat had changed before the fire, or whether, under the contract, defendant could mix or use the wheat by keeping

192—18

on hand, subject to plaintiff's order, the same amount of wheat of like quality, and if so, whether he had on hand the requisite amount of wheat of like quality at the time of the fire, and whether he used proper care for the prevention of fire.

There was no evidence tending to prove that defendant's mill was a public warehouse, but the court, at the instance of the defendant, gave to the jury the following instruction, numbered 4:

"The court instructs the jury that public warehouses, under the law, are divided into three classes, designated as classes A, B and C; that public warehouses of class A shall embrace all warehouses, elevators and granaries in which grain is stored in bulk and in which grain is stored in such a manner that the identity of different lots or parcels cannot be accurately preserved, such warehouses, elevators or granaries being located in cities having not less than 100,000 inhabitants; public warehouses of class B shall embrace all other warehouses, elevators and granaries in which grain is stored in bulk and in which the grain of different owners is mixed together; public warehouses of class C shall embrace all other warehouses or places where property of any kind is stored for a consideration; that no public warehouse shall be held responsible for any loss or damage to property by fire while in his custody, provided reasonable care and diligence be exercised to protect and preserve the same."

Section 1 of article 13 of the constitution is as follows: "All elevators or storehouses where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses;" and by that article the legislature are required to pass laws for the inspection of grain, for the protection of producers, shippers and receivers of grain and produce. The State has made no attempt to regulate purely private business affairs, but it is the public

agency which the constitution and the statute bring under the legislative control as to rates of storage and other provisions for the protection of producers and shippers. Public warehouses are those where the business of receiving grain or property in store for the public for a compensation is carried on. Where that business is not carried on, isolated instances of receiving property, as in this case, would not convert a mill, store, barn or granary into a public warehouse. The instruction is a purely abstract statement of law, and the giving of such instructions has not been commended, although it is not regarded as error to give one of that character if it has no tendency to mislead. It is the duty of the court to give to the jury, in its instructions, rules of law which are applicable to the evidence in the case, and to make the application so that the jury may understand the relation of the rules to the evidence. The court did not apply this instruction to the evidence in any way, and, of course, could not do so, since there was no evidence to which the court or jury could apply it. The only effect of the instruction would be to lead the jury to infer that there was some ground upon which they could find that defendant was a public warehouseman, while, so far as appears, defendant was not doing a public warehouse business or storing grain at all, except in connection with his business as a miller. It is not to be presumed that defendant was a public warehouseman without proof of the fact, and the receipt of plaintiff's grain under an option to purchase it, and the subsequent purchase of a part of it and grinding of a part of it into flour, would have no tendency to prove that fact. The mill was shown to be a building with machinery for making flour out of grain, where the business of grinding wheat was carried on. There were several bins in the mill, so connected as to draw the wheat into the hopper to be ground into flour. Defendant may have sold some wheat as well as flour, but the natural inference to be drawn from the only facts

in evidence was that the mill was not open to the public as a warehouse. Until there was some further evidence, the only conclusion permissible was that the business carried on was that of a grist mill. The case should have been determined from the evidence as to the agreement of the parties, and the instruction raised a false issue based upon no evidence. The instruction was calculated to mislead the jury, and it was error to give it.

Although there was no evidence that the defendant was a public warehouseman, he might agree with the plaintiff, as was claimed, that the wheat might be mixed, ground or disposed of, and that he should hold an equal amount of wheat of the same grade in place of it, subject to the plaintiff's order. If there was no such agreement, and the grain was stored to be kept and re-delivered to the plaintiff, with the option on the part of defendant to purchase it whenever plaintiff was ready to sell, he would be bound to keep the grain in the condition in which it was received until demanded. In such a case, if defendant made the wheat into flour as his own property it would be a conversion of the wheat and he would be liable, and plaintiff might recover for the value of the grain. (*Ives* v. *Hartley*, 51 Ill. 520.) If there was an agreement by which defendant was authorized to mix the wheat with his own grain, or grind it and dispose of it, and to keep in store for plaintiff an equal amount of wheat of the same grade, the question would be whether he complied with his agreement and kept in store the requisite amount of the same grade, and whether he used proper care for its safety and the prevention of fire.

The judgments of the Appellate Court and the circuit court are reversed, and the cause is remanded to the circuit court.                              *Reversed and remanded.*