## In re BOULDER MILLING & ELEVATOR CO.

(District Court, D. Colorado. September 13, 1922.)

No. 4172.

1. **Bankruptcy ⊙⟿84—That amended petition alleges new acts of bankruptcy not ground for dismissal.**

That an amended petition, stating more fully acts of bankruptcy alleged in the original petition, also alleges new acts of bankruptcy, is not ground for its dismissal.

2. **Bankruptcy ⊙⟿76(1)—Petitioners held creditors under a contract.**

A contract under which petitioners delivered wheat to a milling company, with the right to demand payment at market price at any time within one year, less advances made, was not one of bailment, but of sale, under which petitioners became creditors though for an unliquidated amount, and were entitled to maintain a petition in involuntary bankruptcy against the milling company on its commission of an act of bankruptcy.

In Bankruptcy. In the matter of the Boulder Milling & Elevator Company, alleged bankrupt. On motion to dismiss amended petition. Denied.

Carlson & Erickson, of Denver, Colo., and Granby Hillyer, of Lamar, Colo., for petitioning creditors.

T. A. McHarg, of Boulder, Colo., for First Nat. Bank of Boulder, Colo.

Bartels & Blood and H. C. Tallmadge, all of Denver, Colo., for Colorado Nat. Bank of Denver.

R. S. Newcomer, of Boulder, Colo., for Boulder Milling & Elevator Co.

SYMES, District Judge. [1] The matter is now before the court on what is really a joint motion of the Colorado National Bank and the First National Bank of Boulder to dismiss the amended petition in bankruptcy. The first ground urged in behalf thereof is that the amendments made by petitioners set up new acts of bankruptcy, and were more than mere amendments of the original petition. We have examined the petition and the amended petition, and it may be that one or two new acts of bankruptcy may have been pleaded. Yet there is one act at least in the amended petition which, when compared with the original, is a more specific and detailed statement thereof, and in this

respect complies with the request made by the banks in their motion to dismiss the original petition, to wit, that "a further and better statement of the nature of their claims, and further and better particulars be stated of the acts of bankruptcy." This being true, any new acts in the amended petition might be disregarded. Collier on Bankruptcy says, in volume 1, p. 463 (12th Ed.):

"But such an amendment [an act of bankruptcy not referred to in the original petition] may be permitted if clearly in furtherance of justice."

And also:

"The tendency of the decisions is toward a more liberal practice in granting amendments and in some of the later decisions it has been held that it is discretionary with the court to permit the petitioner to insert by amendment additional acts of bankruptcy."

[2] The second ground urged is that on the 10th day of March, 1922, when the milling company committed an alleged act of bankruptcy, that the petitioning creditors were not claimants. On this question we have read with interest and care the exhaustive brief filed in support of the motions, and are forced to the conclusion that the arguments advanced are not applicable to the facts here.

It is argued that the amended petition does not allege that the Boulder Company was in March last indebted to the petitioners in any sum whatever. We agree with counsel in this statement. The amended petition does not properly plead the legal effect of the agreement under which the petitioners' wheat was delivered to the milling company; but, not desiring to rest strictly on a technicality, we have examined the facts pleaded, in order to determine whether or not the petitioners were creditors on the date in question. It appears that wheat was delivered to the milling company under an agreement that it would be stored with, and held by, the latter, and sold by them on any day directed by the petitioner within one year from date of delivery, and the difference between the market price prevailing on that day and the amount advanced on the date of delivery will be the amount due. While the amount due was on March 10th not liquidated, yet there was clearly an indebtedness existing which the farmer could have liquidated at any time he desired.

It is also clear that all that could be demanded from the milling company was cash, and petitioners were not entitled to the return of their wheat—could not under this contract have maintained replevin, or an action for conversion. Therefore the relation was clearly not that of bailor and bailee. In 6 C. J., p. 1085, in distinguishing a bailment from other relations, it is said:

"It is of the very essence of a contract of bailment that it shall contemplate the return of the property bailed."

And further, on page 1086:

"If by the contract there is no obligation to restore the specific article, but the bailee is at liberty to return either money or other goods of equal value, there is a transmutation of property, and the obligation created is a debt and not a bailment."

On page 1097 of the same volume, in discussing deposit of grain in a warehouse, where the warehouseman can mingle the grain with his own or other grain, it is said (page 1098):

"But the transaction is in effect a sale if the delivery is upon such terms that the warehouseman is not to return, but is to pay for, the grain, or that he has from the beginning the right to use or sell the grain and to pay in grain or money."

In Redfern v. Stacy, 12 Ohio Cir. Ct. 36, it was held, where plaintiff delivered wheat to defendants, receiving from defendants a grain check reciting that the wheat was received on storage, "to be sold not later than the middle of July," it was held that the transaction was a contract to sell under which plaintiff had the option of demanding a sale up to the middle of July at the market price, and that on failure to exercise that option it was a sale to defendants at the then market price.

Motions of the Colorado National Bank of Denver and of the First National Bank of Boulder to dismiss the amended petition are denied.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes