## In re SILVER et al.

### No. 3767–D.

United States District Court
E. D. Illinois.

Nov. 12, 1952.

Order Affirmed.May 1, 1953.

C. E. Tate, Champaign, Ill., for petition-
ing creditors.

John M. Mitchem, Urbana, Ill., for bank-
rupt.

Meyer & Franklin and John L. Franklin,
all of Champaign, Ill., for one creditor.

PLATT, District Judge.

An involuntary petition by three
creditors was filed in this court on June 17,
1952 to adjudge bankrupt, Harold A. Silver
and John A. Silver, individually and as a

partnership, doing business as Silver Brothers and Company. Motion to dismiss was filed by the alleged bankrupt and one creditor. The petitioning creditors on August 25, 1952 filed an amended involuntary petition. Silver Brothers and one creditor have again filed a motion to dismiss the amended involuntary petition. The essential grounds of the motion are: (1) That the allegations of the additional act of bankruptcy having not been alleged in the original petition cannot be alleged in the amended petition to set aside a preference which occurred more than four months prior to the filing of the amended petition; (2) That the claims of petitioning creditors are not fixed as to liability nor liquidated as to amount; and (3) That the amended petition fails to state any facts showing a preference to have been made or accomplished for the reason the claim of the Commodity Credit Corporation is a prior claim entitled under the law to priority.[1]

The first ground for the dismissal of the amended petition is in fact a motion to strike therefrom the second act of bankruptcy. The original petition alleged as an act of bankruptcy that within four months next preceding the filing of the petition the alleged bankrupt committed an act of bankruptcy in that with intent to prefer Commodity Credit Corporation, on the 18th day of February, 1952 they made, executed, and delivered to Thomas A. Hagan, of Champaign, Illinois, a chattel mortgage to secure an antecedent debt of more than $300,000 to the Commodity Credit Corporation, and thereby preferred the said Commodity Cred-

it Corporation to the amount of said mortgage. The mortgage was caused to be recorded in Champaign County, Illinois, on February 20, 1952. Petitioners in their amended petition added the fact that Silver Brothers and each of them were insolvent at the time of the transfer. An additional act of bankruptcy was stated, viz.: That Charles H. Willard on the 29th day of May, 1952 did cause a judgment to be taken against Harold A. Silver and John A. Silver, a partnership doing business as the Silver Brothers, while insolvent, said judgment being taken in the amount of $19,975 and costs, and that Silver Brothers permitted an execution to issue and did not cause the removal of said lien or discharge thereof within 30 days, and that they thereby did prefer said creditor.[2]

Amendments to an involuntary petition in bankruptcy relate back to the date of the filing of the petition where the bankruptcy is imperfectly alleged in the petition. Rule 15(c), Federal Rules of Civil Procedure, 28 U.S.C.A.; General Order in Bankruptcy 37, 11 U.S.C.A. following section 53; In re Claudon, 7 Cir., 73 F.2d 876; In re Yellow Motor Co., 8 Cir., 34 F.2d 118. However, a new act of bankruptcy may not be added by amendment to deprive a creditor of a lien or preference acquired more than four months prior to the date of such an amendment. National Refining Co. v. Pennsylvania Petroleum Co., 8 Cir., 66 F.2d 914; Dworsky v. Alanjay Bias Binding Corporation, 2 Cir., 182 F.2d 803; Collier on Bankruptcy, 14th Ed., Vol. 2, Sec. 18.26.

---

1. The bankrupt asks leave to amend the motion to dismiss to add the additional ground that the claim of J. E. Reeser is disputed and therefore is not fixed as to liability as is required for a petitioning creditor by Section 59, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 95, sub. b. This may be raised by answer but not in a motion to dismiss. In re Beechwood, D.C., 36 F.Supp. 140, 142.

   The creditor's motion to dismiss is not considered because a creditor may not contest an involuntary petition. In the Matter of Carden, 2 Cir., 118 F.2d 677; Sec. 18, sub. b, Bankruptcy Act, 11 U.S.C.A. Ch. 4, § 41, sub. b. Also see Collier

on Bankruptcy, 14th Ed., Sec. 18.33, p. 66.

2. "Acts of bankruptcy. (a) Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference; * * *." Sec. 3, Bankruptcy Act, 11 U.S.C.A. Ch. 3, § 21.

In the instant case Silver Brothers, individually and as a partnership, were adjudicated a bankrupt on September 27, 1952, on a voluntary petition filed that day. The purpose of the adjudication sought on the amended involuntary petition is to prevent the preference, if any, obtained by the Commodity Credit Corporation's chattel mortgage. The amendment on August 25, 1952, adding a new act of bankruptcy, cannot be permitted to relate back to the date of the filing of the original petition to invalidate this transfer which occurred more than four months earlier.

The second ground presented by the motion to dismiss presents the problem as to whether there are three petitioning creditors who have claims fixed as to liability and liquidated as to amount. The amended petition alleges the petitioners' claims as follows:

The claim of J. E. Reeser and Son is based upon an open account for work, labor, and services performed by the said creditors and furnished to the alleged bankrupt in the construction of an elevator building at Myra Station, Urbana, Illinois. It was completed on the 10th day of November, 1949. There is due and owing J. E. Reeser and Son the sum of $23,619.62. .

The claim of R. W. Beeson is based upon the fair, cash, market value of the grain which was delivered by R. W. Beeson to the elevator of the alleged bankrupt at Urbana, Illinois, under an agreement whereby the grain would be stored until Beeson elected to sell the same. It consisted of 839.68 bushels of oats, 393.33 bushels of beans, 237.80 bushels of wheat. After delivery and prior to the 20th day of February, 1952, the alleged bankrupt converted the grain to their own use and sold the same, and thereby became indebted to the claimant for the fair, cash, market value of said grain in the amount of $2,551.25 and the indebtedness has so continued.

The claim of Richard Phillips is based upon 1900 bushels of corn which were delivered by Richard Phillips to the elevator of the said Silver Brothers at Urbana, Illinois, under an agreement that the said grain would be stored until the said Phillips elected to sell the same. The petition alleges as a conclusion that the three creditors have provable claims against the alleged bankrupt, fixed as to liability and liquidated in amount in excess of the value of securities held by them in the amount of $500 or more.

Section 59 of the Bankruptcy Act, 11 U.S.C.A. Ch. 6, § 95, sub. b reads:

"Who may file and dismiss petitions

\*    \*    \*    \*    \*    \*

"(b) Three or more creditors who have provable claims fixed as to liability and liquidated as to amount against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over  \*  \*  \*."

The existence of such debts and their nature must be alleged with particularity and definiteness so as to enable the court to find from the petition the essential jurisdictional facts. In re St. Lawrence Condensed Milk Corp., 2 Cir., 9 F.2d 896, 899. Also see In re Adams, D.C., 53 F.Supp. 982, 983. It requires no citation for the rule that where a motion to dismiss is presented the facts well pleaded in the petition are taken to be true. Prior to the Bankruptcy Act of 1938 a creditor with a provable claim, though unliquidated, could qualify as a petitioning creditor. The Act of 1938, which amended Section 59, sub. b, required that the claim be "liquidated as to amount". Collier on Bankruptcy, 14th Ed., Vol. 3, Sec. 59.14, page 583.

It must be determined whether the petition sets forth three claims liquidated as to amount. The court said, In re Cook, D.C., 298 F. 125, at page 126:

" 'To liquidate a claim is to determine by agreement or litigation the precise amount of it.' Webster's International Dictionary; Bouvier's Law Dictionary."

In Clark, Jr. v. Dutton, 69 Ill. 521, 523, the court, in discussing the liquidation of account, said:

"Bouvier says: A debt is liquidated when it is certain what is due and how much is due. Cum certum est an et

quantum debeatur; for, although it may appear that something is due, if it does not also appear how much is due, the debt is not liquidated."

Vol. 2 Bouvier's Law Dictionary, Rawle's Third Revision, page 2026, defines Liquidated Demand:

"A demand the amount of which has been ascertained or settled by agreement of the parties, or otherwise."

The Silver Brothers have converted the grain and the petitioning creditors have provable claims, but it would require proof to ascertain the liquidated amount of these claims.[3]  Both Beeson and Phillips would have an action in trover for the conversion of the grain.  Yockey v. Smith, 181 Ill. 564, 54 N.E. 1048; Mayer v. Springer, 192 Ill. 270, 61 N.E. 348.  In National Bank of Republic v. Wells-Jackson Corp., 358 Ill. 356, 368, 193 N.E. 215, 221, 98 A.L.R. 618, the court said:

"The measure of damages for conversion of personal property is the value of the property at the time of the conversion."

It is clear that the Phillips and Beeson claims are for unliquidated damages.  Evidence as to the date of the conversion and also the market value of the grain on that date must be introduced to fix the amount of the claims.  In Illinois, damages are said to be liquidated when they can be determined from the contract itself or from the contract and rules of law applicable thereto, and where it is necessary to introduce evidence before the plaintiff can prove his case the damages are said to be unliquidated.  Lepman & Heggie v. Inter-State Produce Co., 205 Ill.App. 270.  The court, in determining whether a claim of a debtor

was liquidated in In re Beechwood, D.C., 36 F.Supp. 140, said at page 142:

"A tortious quality, indeed, enters into the nature of the claim, because it arises out of the alleged conversion by Beechwood.  However, it is not the type of tort that must await juridical award to fix liability and the amount of damage as in the case of an injury to person or property or the taking of money's worth."

In the instant case it is not the taking of money but the conversion of grain which would require a juridical award to have a liquidated amount due.[4]  Therefore, the claims of Beeson and Phillips, as alleged in the petition, cannot be considered in determining whether there are three petitioning creditors.[5]

While the court will not, as a general rule, look outside the record and take judicial notice of any facts, it may in an exceptional case, in order to reach a just result, make use of established and uncontroverted facts in related pending litigation, and this may be done in considering the sufficiency of an involuntary petition on the motion to dismiss.  Morse v. Lewis, 4 Cir., 54 F.2d 1027, 1029.  In Civil Case No. 1053-D filed in this court April 9, 1952, entitled Thomas A. Hagan, U. S. of America and Commodity Credit Corporation v. Ralph Beeson, et al., the complaint alleges that the plaintiffs are in possession of 21470.40 bushels of beans located at the Silver Brothers elevator at Urbana, Ilinois, and that the said Ralph Beeson, among others, has a claim or interest in the soybeans, the amount and validity of which is unknown to the plaintiffs.  Ralph Beeson filed answer therein July 15, 1952, admitting the allegations

---

3.  When petitioning creditors' claims were in the nature of unliquidated demands, the matter was referred to a master to take evidence and to liquidate the claims in amount, in order to determine whether the amounts would support the petition. In re Smith, D.C., 232 F. 284.

4.  Petitioner relies on In re Boulder Milling & Elevator Co., D.C., 283 F. 683.  There the grain was delivered and sold to the warehouse, and the farmer claimant was

advanced the value of the grain and was to be paid any additional amount if the market price increased, during the period of one year.  He could choose the date. In the instant case there was no sale at delivery, but a storage until claimant elected to sell.  For further distinction, see Snydacker v. Blatchley, 177 Ill. 506, 52 N.E. 742.

5.  See Remington on Bankruptcy, 5th Ed., Vol. 1, Par. 204, page 310.

contained in the complaint and claims` 393 bushels of the soybeans in store in the Silver Brothers elevator which were placed by him for storage October or November, 1951; that the beans were not sold to or redeemed from Silver Brothers. An order for the sale of the beans was entered by this court on the 22nd day of July, 1952, and the proceeds impounded with the Clerk of this court. The claimant Beeson has an interest in these beans by virtue of Ill. Rev.Stat. ch. 114, Secs. 255, 256; Jones Ill. Ann.Stat. Vol. 28, Secs. 141.070, 141.071.[6] Judge Evans of our Circuit, in In re Central Illinois Oil & Refining Co., 133 F.2d 657, 660, said:

"Since the amendment of 1938, it is doubtful if a single creditor whose claim is secured, even though the debt greatly exceeds the security, may qualify as one who can file an involuntary petition in bankruptcy without giving up his security. The Act, 11 U.S.C.A. § 95, requires that petitioner's claim be 'fixed as to liability and liquidated as to amount.' Inasmuch as a secured creditor has a petitioning claim only for the difference between the amount of the debt and the value of the security, his claim is not liquidated. He therefore must fail to measure up to the qualifications of a petitioning creditor in an involuntary petition unless he waive his security."

If Beeson has an interest in these beans and thereby an interest in the fund realized from the sale of the beans, his claim would be reduced by the amount that he would receive.[7] His claim would not be liquidated

as to amount and he could not qualify as a petitioning creditor in an involuntary petition.[8]

We now come to the third ground for the dismissal of the amended petition stating that the facts showing a preference to the Commodity Credit Corporation are insufficient to set forth a preference for the reason that the Commodity Credit Corporation is entitled to priority under the law. Counsel for petitioner maintains that the Commodity Credit Corporation would not have a priority under Section 64 of the Bankruptcy Act, 11 U.S.C.A. Ch. 7, § 104. Said Section 64 provides in part: ·

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * *

"(5) debts owing to any person, including the United States, who by the laws of the United States in [is] entitled to priority, * * *."

This court is of the opinion that the Commodity Credit Corporation would classify in the distribution of the assets of the bankrupt under said Section 64, sub. a(5). This is resolved by statute.[9] 15 U.S.C.A. § 714b (e), General powers of Corporation [Commodity Credit Corporation] provides:

"The Corporation * * * (e) Shall have all the rights, privileges, and immunities of the United States with respect to the right to priority of payment with respect to debts due from insolvent, deceased, or bankrupt debtors. The Corporation may assert such

---

6. "255. Authority to mingle fungible goods.
   If authorized by agreement or by custom, a warehouseman may mingle fungible goods with other goods of the same kind and grade. In such case the various depositors of the mingled goods shall own the entire mass in common, and each depositor shall be entitled to such portion thereof as the amount deposited by him bears to the whole."
   "256. Liable for delivery of several shares.
   The warehouseman shall be severally liable to each depositor for the care and re-delivery of his share of such mass to

the same extent and under the same circumstances as if the goods had [been] kept separate."

7. The question might be raised as to whether Beeson has waived his rights in the beans by becoming a petitioning creditor. In re Central Illinois Oil & Refining Co., supra.

8. Also see In re Garrett & Co., 7 Cir., 134 F.2d 227, on the qualifications of a petitioning creditor.

9. Collier on Bankruptcy, 14th Ed., Sec. 64.502, page 2180 and Supplement, page 160.

rights, privileges, and immunities in any suit, action, or proceeding."

31 U.S.C.A. Ch. 6, § 191, Debts Due by, or to, the United States, provides:

"Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. (R.S. § 3466.)"

In view of these two sections of the statute, it is obvious that the Commodity Credit Corporation would qualify for a priority as a fifth class creditor in the order of distribution in bankruptcy. It is true, as counsel for petitioners contends, that said Section 191 does not apply to bankruptcy proceedings, but this does not defeat the priority in the distribution of the assets of the bankrupt provided by Section 64 of the Bankruptcy Act. In re Van Winkle, D.C., 49 F.Supp. 711, 714; Adams v. O'Malley, 8 Cir., 182 F.2d 925. The Reconstruction Finance Corporation has been held to have such a priority in the distribution of the assets in bankruptcy. Reconstruction Finance Corporation v. Flynn, 2 Cir., 175 F.2d 761.

This court is not holding there is not an act of bankruptcy sufficiently alleged as provided by Section 3, sub. a(2), of the Bankruptcy Act, when attacked by the motion to dismiss. A "preference" refers to any betterment of position in the distribution of the assets of the bankrupt as provided by Section 60 of the Bankruptcy Act; a "priority" applies only as to the order of distribution, as provided by Section 64 of the Bankruptcy Act. All of the allegations being taken as true, there could be a preference. Sec. 60, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. Ch. 6, § 96, Preferred Creditors, provides in part, in defining a preference:

"* * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Collier on Bankruptcy, 14th Ed., Sec. 60.34, page 866, in interpreting this element of a preference, reads:

"It is * * * believed that its meaning would be better expressed if the clause read: 'the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.' "

Assuming the other requirements, before the chattel mortgage to the Commodity Credit Corporation would be a preference it would require proof that it would receive a greater percentage of its debt than any of the other creditors of the same class. Tatum v. Acadian Production Corporation, D. C., 35 F.Supp. 40; In re Mason, D.C., 49 F.Supp. 781; Swarts v. Fourth Nat. Bank, 8 Cir., 117 F. 1; Remington on Bankruptcy, 5th Ed., Sec. 135, p. 216. This element of a preference would have to be determined at the time the bankruptcy results. Palmer Clay Products Co. v. Brown, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655. The court has discussed this point inasmuch as counsel have devoted a great deal of time to it in oral argument and briefs.

Therefore, the amended involuntary petition must be dismissed for the reason that there are not three qualified petitioning creditors with provable claims fixed as to liability and liquidated as to amount.

It is so ordered.