## A. MAYER

*v.*

## WILLIAM GERSBACHER *et al.* Admrs.

*Opinion filed February 17, 1904.*

1. BAILMENTS—*when miller is not liable for loss of grain by fire.* A miller who mixes grain under an agreement with the owner that he will keep an equal quantity on hand, of the same grade, subject to the owner's order, is not liable for loss by fire if he keeps his agreement and uses proper care for the safety of the grain and the prevention of fire.

2. SAME—*when time of the agreement is not material.* Whether the agreement permitting a miller to mix grain was made at the time the grain was received or at a later period is not material, if the grain was intact at the time of such agreement.

3. SAME—*bailee without reward is held to reasonable diligence, only.* A miller who receives grain for safe keeping to accommodate the owner and without reward, is only held to the use of ordinary care and diligence in caring for the grain.

*Mayer* v. *Gersbacher,* 106 Ill. App. 511, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of White county; the Hon. E. E. NEWLIN, Judge, presiding.

GEORGE B. PARSONS, and JESSE E. BARTLEY, for appellant.

PARISH & PARISH, and C. S. CONGER, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of White county in favor of John W. Springer, appellees' intestate, in a suit brought by appellant to recover for certain wheat deposited in defendant's mill, and which, with the mill, had been destroyed by fire. The case has been twice tried in the said circuit court and judgments entered in favor of defendant, and,

on appeal, each time affirmed by the Appellate Court. The first appeal to the Appellate Court is reported in 95 Ill. App. 173. An appeal from the decision therein rendered was taken to the Supreme Court, and the decision there obtained is reported in 192 Ill. 270, to which reference is made for a more extended statement of the pleadings. On said appeal to the Supreme Court the judgments of the lower courts were reversed on the ground of an erroneous instruction.

The evidence shows that there was deposited in intestate's mill, in 1898, 3247 bushels and twenty-two pounds of wheat belonging to appellant, and the following receipts were taken:

"SHAWNEETOWN, *Aug. 19, 1898.*

"Received from A. Mayer 2142 bushels and 25 pounds of No. 2 red wheat, to be held in storage for him (A. Mayer) in the Riverside mills.

J. W. SPRINGER & CO.,
BY J. M. WHITE."

"SHAWNEETOWN, *Sept. 24, 1898.*

"Received from Mr. A. Mayer the following lots of wheat: 798⁴⁰⁄₆₀ bushels of wheat, testing 56 pounds; 164⁴⁰⁄₆₀ bushels of wheat, testing 55½ pounds; 151 bushels of wheat, testing 50½ pounds.

J. W. SPRINGER & CO."

It seems to be agreed that by the terms of the contract of storage appellant was to pay nothing for storing the wheat, and appellees' intestate was to have the option of purchasing the wheat when appellant concluded to sell, provided said intestate would pay as much as any one else.

In July, 1899, appellant made a further deposit of 498 bushels and twelve pounds, making in all 3745 bushels and forty-four pounds. Of this amount appellant sold to appellees' intestate, in January, 1899, 1000 bushels, and in July, 1899, 380 bushels, all of which was paid for and is not in controversy here. There was left a balance of 2365 bushels and forty-four pounds, the subject of this litigation. For the deposit in 1899 no receipt was taken, and as to the terms on which it was received, M. W. Car-

ter, assistant manager of defendant's mill, testified that
when the wheat was brought in he told one Karcher,
who had charge of it, that the mill was full and there
was no place to put it, but that as the wheat was dry
they could mix it with other wheat and use it in that
way, but they had no place to store it unless they emp-
tied out the sacks, and it was there agreed that they
were to use and grind the wheat if they wanted to, Kar-
cher stating, "We don't care anything about the wheat;
we never expect to move the wheat out of here, but if
we do, we only want just as good as we put in."

The testimony on the part of defendant was to the
effect that about the first of December, 1898, the weevil
got into the wheat, and when appellant was so informed,
it was agreed that defendant, appellees' intestate, should
re-clean and grind the wheat, making such disposition
of it as he saw fit, and keep on hand, for appellant, an
amount of like quantity and quality. On the part of
appellees' intestate it is claimed, that he in all respects
carried out this agreement, and at all times, up to the
time the mill was burned, kept on hand sufficient wheat
of the same grade as appellant's, and subject to his or-
der, to re-place the wheat deposited. This alleged agree-
ment, and the contention of the appellees' intestate as to
his compliance therewith, were denied by appellant, and
formed the main question in dispute upon the trial.

In addition to the plea of general issue, filed to the
declaration at the first trial, defendant, on the present
trial, filed notice of his defense, in writing, as follows:
"The plaintiff will take notice that on the trial of this
cause the defendant will give in evidence, and insist,
that previous to the time when the said mill and the
wheat of said plaintiff was destroyed by fire, an agree-
ment had been entered into by and between said plaintiff
and said defendant by which said defendant was author-
ized to mix the said wheat of plaintiff with that of said
defendant, and to grind up and dispose of the said wheat

of said plaintiff as said defendant might desire, and to keep in store for said plaintiff an equal amount of wheat of the same grade as the wheat of plaintiff, subject to the plaintiff's order and demand, and that in pursuance of said agreement said defendant did grind up and dispose of the wheat of said plaintiff, and in lieu and place thereof the said defendant did keep in store in his said mill an equal amount of wheat to that received by defendant from said plaintiff, and of the same grade, at all times subject to the demand of said plaintiff from and during and at all times after the said wheat of plaintiff was received by defendant in his said mill up to the time the said mill and its contents were destroyed by fire, and that such quantity of wheat was actually in said mill at the time the said mill was so destroyed by fire and was burned up and destroyed by fire; that said defendant at all times used proper care for the safety of said wheat and the prevention of the fire which destroyed the said mill and wheat."

The errors assigned are the giving of instructions for defendant and the refusal and modification of instructions for plaintiff. The instructions for defendant are all objected to. They are eight in number and cover several pages, and we deem it unnecessary to set them out in full, for, while minor inaccuracies may be imputed to them, they contained no such error as would necessitate a reversal of this case. Counsel for appellees insist that all of their instructions were framed with direct reference to the language of this court on the former appeal of this case, and based upon the evidence. The language of the court referred to is: "If there was an agreement by which defendant [Springer] was authorized to mix the wheat with his own grain or grind and dispose of it, and to keep in store for the plaintiff [Mayer] an equal amount of wheat of the same grade, the question would be whether he complied with his agreement and kept in store the requisite amount of the same grade, and

whether he used proper care for its safety and prevention of fire."

Appellant's objections to the first of said instructions are, that "there is no evidence to support the proposition that there was an agreement for the defendant to keep in store for appellant other wheat;" and "the instruction is misleading for the further reason that it does not fix the time of the agreement and limit the time of keeping other wheat in store for appellant to the time subsequent to the agreement."

J. M. Springer testified in behalf of appellees, that in the summer of 1898 he was running the Riverside mill, belonging to J. W. Springer & Co.; that he was overseer and manager; that he remembered about appellant putting wheat in the mill in 1898, and that about the first of December weevil got into this wheat; that he notified appellant of the weevil and that he would have to do something, as the weevil would ruin the mill, and that he would have to re-clean it or do something with it; "he asked me if we could re-clean the wheat in the mill, or ship it, or do something with it, and I told him I did not know, but we probably could re-clean part of it; Mayer said, 'Go ahead and re-clean the wheat and grind it, or do whatever you want to with it; I have no room to clean it, and whatever you do is all right with me; wheat is wheat, and all I want is as good wheat as I put in there, if I don't sell it.'" Witness further testified that on January 21, after the weevil got into the wheat, he bought 1000 bushels of this wheat from Mayer, and on July 22 bought 380 bushels more. He further testified that on the night of the fire there was enough wheat in the bins to answer all deposits, of as good grade as that deposited by Mayer and some of it better, and that he bought wheat of other parties for grinding, as they did not want to grind their deposit wheat. "I was at the mill when the first wheat was put in there by Mayer, in 1898; up to the time the weevil got into it the wheat was kept distinct

from the other wheat and had not been mixed with other wheat." As to the wheat deposited by appellant in 1899, this witness stated that he directed Mr. Carter to make the contract.

John W. Springer, appellees' intestate, testified that his brother, Jim Springer, and one White, were in charge of the mill in 1898 and 1899, and in a conversation with appellant after the fire, in regard to a settlement between them as to the lost wheat, he asked appellant, "Didn't you give my brother Jim permission to re-store it or re-clean the wheat or ship it?" and in reply "he said he had told Jim to do that; 'take the wheat and re-clean it, as I can't do that;' said he had been a good friend to him and wanted him to help him along; is about his language as well as I remember it now."

M. W. Carter testified, in behalf of appellees, that in 1898 and 1899 he was employed at the Riverside mill as assistant manager and book-keeper; that he was there in 1899 when the Mayer wheat was brought in; that it was not received under any agreement when brought in, and after some conversation had about not receiving the wheat because the mill was full, said: "This wheat is dry and all right, and we have got wheat that we can mix with it and grind it, and if you will let us do so we can use it that way, but we have got no place to store it at all unless we empty it out of the sacks; and the agreement between Mr. Karcher [the man in charge of the wheat] and I was, that we were to use the wheat and grind it if we wanted to. He said, 'We don't care anything about the wheat; we never expect to move the wheat out of here, but if we do, we only want wheat just as good as we put in.'" Witness further testified, in response to the inquiry of whether there was kept on hand at all times, while he was at the mill, sufficient wheat to meet the demands of depositors, "Yes, at all times, of the same grade and quality that Mayer had in the mill." This was objected to unless the witness knew the grade

of the Mayer wheat of 1898. Witness then stated that he did test the wheat brought in 1899, himself, and that brought in in 1898 was pointed out to him when he first went in the mill, by Jim Springer. The latter part of this answer was also objected to and objection sustained.

Under the above evidence we think appellant's objection to the instruction, for the reasons stated, cannot be sustained.

The second instruction was as follows:

"The court instructs the jury that if you believe, from a preponderance of the evidence, that there was an agreement entered into between the plaintiff and defendant, or their authorized agents, in reference to the mixing or grinding up of plaintiff's wheat, then it makes no difference whether such agreement was made at the time the wheat was deposited in the mill or at any time after that and prior to the fire."

Appellant's objection to this instruction is, that it leaves out of consideration the fact that there might have been a conversion of the wheat before the making of the alleged agreement. The fact of such agreement was the main issue, and, notwithstanding plaintiff's denial, the jury must have given credence to the defendant's contention. There was evidence tending to show that until the question about the weevil in appellant's wheat arose the deposit was preserved intact, and when that question arose the evidence indicates, at least, that there was a new arrangement between the parties. At least we think there was evidence tending to support such a conclusion. It is true, concerning this arrangement there was a direct conflict in the evidence, but the finding of the jury was favorable to appellees. The instruction is, in a sense, open to the criticism appellant suggests, yet we do not think he was injured by the inaccuracy referred to, for unless the jury accepted defendant's whole version of the matter, which was, that until the question about the weevil arose the deposit remained

intact and then a new arrangement was effected, we do not think it at all probable they could have found in favor of defendant, and if the jury did take such view, the inaccuracy of the instruction did not injure appellant.

The third instruction was:

"The court instructs the jury, if you believe, from the evidence, that the plaintiff stored wheat in defendant's mill for safe keeping, then defendant is bound only to use ordinary care in keeping and caring for said wheat."

Of this instruction appellant says, that although it announces a correct principle of law upon the issue as to whether or not the defendant is liable for the loss of the wheat if occasioned by the destruction of the mill by fire, yet it is calculated to mislead the jury on the other issues involved in the case, in that it does not limit the degree of care to that issue; that under this instruction a jury might infer that if defendant used only ordi-· nary care in keeping the wheat or in caring for it so as to prevent its being mixed with wheat of defendant, he would not be liable, even though the manager of defendant may have, without authority from plaintiff, mixed it with other wheat. There is evidence to sustain the conclusion that the appellees' intestate was but a bailee without reward, and in such case he was only held to reasonable diligence in caring for the wheat, and the instruction accurately stated the law.

The fifth instruction was:

"The court instructs the jury that in determining the question as to whether or not the defendant had in his mill a sufficient quantity of wheat of like grade and character as that deposited by the plaintiff, you should take into consideration all the facts and circumstances proven in the case."

Appellant's counsel say this instruction was erroneous because it singled out a fact immaterial in itself and directed the jury's attention to it; that in the absence of an agreement that the defendant might use the

wheat of plaintiff and keep in store for him other wheat
of like grade, it was immaterial whether defendant had
other wheat of like grade or not; that this instruction
might cause the jury to infer that the only issue involved
was, did defendant have other wheat, and thus divert
their attention from other material issues.    Other in-
structions presented to the jury the material issues, and
we do not think they were obscured by the giving of this
instruction.

. The sixth instruction was as follows:

"The jury are instructed that if you believe, from a
preponderance of the evidence, that the plaintiff depos-
ited the wheat with the defendant in his mill, and that
the defendant was to have the right to return to the
plaintiff the number of bushels of wheat so deposited, of
like grade, at any time the plaintiff so desired, and that
at the time the mill burned the defendant had in his mill
the amount of wheat of like grade ready to be delivered
to the plaintiff, and that the defendant used ordinary
care to prevent fire or destruction of the wheat, then, in
such case, the plaintiff cannot recover."

Under the evidence we cannot see that appellant was
harmed by this instruction.    There is no evidence that
plaintiff desired or demanded the return of any wheat
prior to the burning of the mill, and if at that time the
defendant had on hand, subject to plaintiff's order, the
required wheat, then, under such an agreement as the
instruction requires the jury to first find in order to ex-
empt the defendant from liability, the appellant has no
cause for complaint.

The eighth instruction given for defendant was:

"The court instructs the jury, that if you believe,
from a preponderance of the evidence, that there was
an agreement by which the defendant was authorized to
mix the wheat of plaintiff with his own grain, or grind
it and dispose of it, and to keep in store for plaintiff an
equal amount of wheat of the same grade, to be delivered

to plaintiff at any time upon demand, then, if you further believe, from the preponderance of the evidence, that the defendant complied with his agreement and kept in store, and had in the mill at the time of the fire, the requisite amount of wheat of the same grade of that delivered by plaintiff, and that he used proper care for the safety of the wheat and the prevention of fire, the defendant would not be liable for its loss, and the jury should find the issues for the defendant."

Appellant contends that this instruction is erroneous because not stating the law applicable to the case as determined by the agreement pleaded in the notice of special matter, nor as determined by the subsequent agreement attempted to be proven by the evidence. We think there was evidence upon which this instruction might properly be based. Appellant contends that there was nothing in the language of the alleged agreement, as testified to by witnesses for defendant, to the effect that any wheat was to be kept in the mill subject to appellant's order. We are of the opinion, however, that such an inference might fairly be drawn from the words, "All I want is as good wheat as I put in there, if I don't sell it to you," and, "We don't care anything about the wheat; we never expect to move the wheat out of here, but if we do, we only want wheat just as good as we put in."

Complaint is made of the modification and refusal of certain instructions offered by appellant. Appellant's third, fifth and seventh instructions, as offered, were modified and given, and his ninth, tenth and eleventh instructions were refused.

There was no error in the modification of appellant's third instruction. As given it conformed to the rule as stated by this court on the former appeal.

The fifth instruction, as modified, told the jury that it was the duty of one who receives grain in storage to use reasonable diligence to keep such grain in the con-

207—20

dition in which it was received, and if he mixes such
grain with his own grain or with that of another, or uses
the same, without the consent of the depositor, such act
amounts to a conversion of the grain. The instruction,
as offered, made the duty absolute, and the modification
was the insertion of the expression to use reasonable
diligence to keep, etc. It is complained that this in-
struction, as modified, told the jury that the bailee need
only use reasonable diligence to prevent the grain being
mixed with other grain or from being converted to the
bailee's own use. We do not think the language of the
instruction, or the purport of it, would bear such inter-
pretation. The first portion of the instruction tells the
jury that as bailee he should use reasonable diligence to
care for it, and that he would be liable if he mixed it or
converted it without the consent of the owner.

The seventh instruction, as modified, was, that if it
was agreed between the plaintiff and defendant that the
defendant might mix the wheat of plaintiff with other
wheat, or use the same, and keep on hand other wheat
of like quality and amount, subject to the order of the
plaintiff, the jury could not find for the defendant unless
they further believed, from the evidence, that the defend-
ant did keep stored in his mill wheat of a like amount
and quality to meet the demands of the plaintiff, and
that if the jury believed, from a preponderance of the
evidence, that defendant converted the wheat to his own
use and did not keep in store, and have at the time the
mill was burned, wheat in equal amount and quality sub-
ject to the order of the plaintiff, the verdict should be in
favor of the plaintiff. It is contended by appellant that
as defendant gave notice that he would rely upon the
defense of authority to mix the wheat and pay in other
wheat in like quality and amount and that he was always
ready to perform that agreement, the burden, under this
notice, was cast upon the defendant to establish this
defense, but the instruction in question cast the burden

upon appellant. We are unable to see how the instruction attempted to place the burden upon either of the parties. It simply told the jury, if they found, from a preponderance of the evidence, the matters stated in the instruction, they should find for the plaintiff, but did not tell the jury who should make the preponderance; nor did the instruction, as originally offered, tell the jury that the burden rested upon the defendant upon this issue. Appellant's fourth instruction told the jury expressly that the burden upon the issue of a new contract, made after the wheat was stored, by which appellees' intestate might mix the wheat with his own, or grind it and re-place it with other wheat, was upon defendant. We do not think the instruction misleading as modified.

The ninth refused instruction offered by appellant was, in substance, that even if the jury believed, from a preponderance of the evidence, that the plaintiff agreed with the defendant that he could clean the wheat and grind it, and that in pursuance thereof the wheat was ground and shipped out by the appellees' intestate, then such transaction amounted to a sale, and the defendant was liable for the value of the wheat. This instruction was properly refused. There was no evidence tending to support it. It wholly ignores the evidence forming part of the statement of appellant or his agent which authorized the grinding of the wheat, that all appellant wanted was wheat as good as that put in there.

The tenth refused instruction was purely an abstract proposition of law. While we do not think it was error to refuse it, as we regard it as inherently bad, we would not reverse the case if it were good, as it was not applied to the case.

The appellant's eleventh refused instruction stated a proposition of law applicable to the case, and, so far as we can see, stated it correctly, yet we do not regard it as error to refuse it, because the same proposition is contained in appellant's seventh instruction as given.

Appellant's main contention seems to have been that there was not sufficient evidence to sustain the verdict or on which to predicate the instructions already discussed. It is not our province now to consider the weight of the evidence, but only to look into the record far enough to ascertain whether the evidence is of a character to support the judgment and verdict and on which to predicate the instruction, and having arrived at the conclusion that there is, we are bound to affirm the judgment of the Appellate Court, which is done.

*Judgment affirmed.*