Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>Parte Recurrida<br><br>v.<br><br>EL OJO DE AGUA DEVELOPMENT, INC.<br>Parte Peticionaria | KLCE202301109 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Núm.:<br>KEF20080188<br><br>Sobre:<br>EXPROPIACIÓN FORZOSA |

Panel integrado por su presidenta, la Juez Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Prats Palerm[1].

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2024.

Comparece la parte interesada-peticionaria, El Ojo de Agua Development, Inc. (en adelante, ¨peticionarios¨ o ¨El Ojo de Agua ¨) mediante recurso de *Certiorari* presentado el 10 de octubre de 2023. Solicitan la revocación de una *Resolución* del Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, ¨TPI¨) dictada el 17 de mayo de 2023 y notificada el 25 de mayo de 2023. Mediante la *Resolución* el TPI declaró ¨No Ha Lugar¨ una *Moción para el pago de la justa compensación* y que no tenía jurisdicción para ordenar el pago de lo ordenado en la *Sentencia* del 12 de julio de 2022 dictada por el Tribunal de Apelaciones de los Estados Unidos del Primer Circuito (en adelante, ¨Primer Circuito¨).

Por los fundamentos que expondremos a continuación, se expide el auto de *Certiorari* y confirmamos la *Resolución* apelada.

---

[1] Mediante Orden Administrativa OATA-2023-212 de 18 de enero de 2024, se designa a la Hon. Annette M. Prats Palerm en sustitución del Hon. José Ignacio Campos Pérez.

**I.**

Los hechos de este caso se remontan al 10 de abril de 2008 cuando el Estado Libre Asociado de Puerto Rico (en adelante, ¨ELA¨) presentó una petición de expropiación forzosa a nombre y para beneficio del Municipio de Juana Díaz. La expropiación forzosa pretendía adquirir el dominio absoluto de una parcela de 6.55 cuerdas de terreno ubicada en el mismo municipio. A su vez, tenía como fin público el uso del terreno para el Proyecto Viviendas Unifamiliares, Carr. Estatal 14, Km. 20.6 Barrio Cañas Arriba de Juana Díaz, Puerto Rico. Como parte del proceso de expropiación forzosa, el ELA señaló como parte con interés a la corporación El Ojo de Agua y a su titular, Humberto Escabí Trabal.

Tras varios trámites y celebrado el juicio en su fondo, el TPI, Sala Superior de San Juan dictó *Sentencia* el 9 de febrero de 2015. Mediante el dictamen determinó que el ELA tenía que pagar a El Ojo de Agua la cantidad de $295,000.00 por concepto de justa compensación del terreno expropiado. Además, determinó que la expropiación tuvo el efecto de dejar una porción de 31.18 cuerdas de terreno enclavado, por lo que procedía una compensación adicional en daños a favor de El Ojo de Agua de $1,403,000.00, más los intereses legales.

Luego de varios trámites procesales que no son necesarios pormenorizar para poder disponer del caso, el 25 de octubre de 2022 El Ojo de Agua presentó una *Moción para el pago de la justa compensación.* Alegó que, mediante la confirmación de la *Octava Enmienda al Plan de Ajuste bajo el Título III del ELA, et al.* se ordenó el pago total e íntegro de la justa compensación en casos de expropiación forzosa. Señaló que, por lo tanto, procede la consignación de la justa compensación según la *Sentencia* del 9 de febrero de 2015 dictada por el TPI.

Por su parte, el 28 de noviembre de 2022 el ELA presentó una *Oposición a la moción para el pago de la justa compensación*. Alegó que el TPI no posee jurisdicción para emitir una orden al ELA respecto a la consignación o pago de la sentencia pendiente. Además, adujo que la paralización de los procedimientos contra el Estado y sus funcionarios continúa en vigor. Argumentó que el Plan de Ajuste solo modificó la paralización para atender la continuación de la litigación de los casos de expropiación forzosa y la distribución de los fondos consignados en el Tribunal. Añadió que la Corte Título III posee jurisdicción exclusiva para atender este tipo de asuntos.

El 5 de diciembre de 2022, El Ojo de Agua presentó una *Moción de Réplica a Oposición* en la que argumentó que el Plan de Ajuste le confiere jurisdicción y competencia al TPI para el pago y distribución de la justa compensación. En respuesta, el 27 de diciembre de 2022 el ELA presentó una *Dúplica de Réplica* en la que señaló que la paralización automática no fue levantada para incluir casos de ejecución de sentencia. El 24 de enero de 2023, El Ojo Agua presentó una *Breve Réplica a Dúplica* en la que reafirmó su postura.

Así las cosas, el TPI dictó una *Resolución* el 17 de mayo de 2023, notificada el 25 de mayo de 2023. Mediante la Resolución, el TPI resolvió ¨No Ha Lugar¨ la *Moción para el pago de la justa compensación* por falta de jurisdicción. El TPI determinó que la Corte Título III retiene la jurisdicción exclusiva sobre cualquier asunto relacionado a disputas sobre las distribuciones bajo el Plan de Ajuste.

El 8 de junio de 2023, El Ojo de Agua presentó una *Moción de Reconsideración*. El 5 de julio de 2023 el ELA radicó una *Moción de Prórroga* solicitando un término adicional para expresarse sobre la moción de reconsideración. El ELA presentó su *Oposición a Moción de Reconsideración* el 31 de julio de 2023.

Luego de varios trámites, el 12 de septiembre de 2023 el TPI dictó una *Orden*, notificada el 14 de septiembre de 2023. Mediante el referido dictamen el TPI declaró ¨No Ha Lugar¨ la *Moción de Reconsideración* presentada el 8 de junio de 2023.

Inconforme, el 10 de octubre de 2023 El Ojo de Agua presentó un recurso de *Certiorari*. Solicitó que se revocara la *Resolución* del 17 de mayo de 2023. Realizó el siguiente señalamiento de error:

> Erró el TPI al declararse sin jurisdicción para ordenar el pago de la justa compensación determinada en su Sentencia de 9 de febrero de 2015 que es final y firme y ordenar el pago de las costas.

El 16 de octubre de 2023 este Tribunal dictó una *Resolución* concediéndole al ELA un término de diez (10) días para exponer su posición. A tales efectos, el 24 de octubre de 2023, el ELA presentó una *Solicitud de breve término adicional* solicitando un término adicional para exponer su posición. El 26 de octubre de 2023 dictamos una *Resolución* concediendo un término final, a vencer el 3 de noviembre de 2023, para presentar su escrito en oposición.

En cumplimiento, el 3 de noviembre de 2023, el ELA presentó su *Escrito en cumplimiento de orden* en donde expuso su oposición a la expedición del auto de *Certiorari*. Sostiene que el TPI no tiene jurisdicción para ordenar la consignación o pago de la Sentencia pendiente. Argumenta que el párrafo 58.1 del Plan de Ajuste no le confiere jurisdicción al tribunal para ordenar la consignación de pago y distribución de la justa compensación en casos de expropiación forzosa cuyos hechos ocurrieron previo a la petición de quiebra del Gobierno de Puerto Rico y que tengan sentencias finales y firmes que no sean líquidas. Reitera que quedan asuntos por resolver que afectarían la justa compensación, como el cálculo de los intereses. Debido a esto, sostiene que la ejecución de la sentencia se mantiene paralizada. No obstante, argumenta que el TPI tiene

jurisdicción para permitir la litigación de la cuantía de intereses de forma que la Sentencia emitida advenga líquida.

## II.

### A. El *Certiorari*

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de

> decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para analizar el problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad

aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Se podrán revisar, mediante *certiorari*, los asuntos post sentencia los cuales, de ordinario, no tienen otro método disponible de revisión apelativa. En estos casos, la intervención apelativa deberá limitarse a considerar si procede expedir el auto sobre una determinación en un trámite post sentencia, a tenor con los criterios de la Regla 40 de nuestro Reglamente, *supra. IG Builders et al. V. BBVAPR*, 185 DPR 307 (2012); *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145.

**B. Jurisdicción**

La jurisdicción se define como el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). En Puerto Rico, los tribunales son foros de jurisdicción general por lo que, de ordinario, pueden atender todo tipo de controversia que sea traída ante su consideración, excepto que carezcan de jurisdicción sobre la materia. *Adm. Terrenos v. Ponce Bayland, supra; Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Beltrán Cintrón et al. v. ELA et al., supra,*

*citando a Rodríguez Rivera v. De León Otaño, supra.* Sobre este particular, nuestro Tribunal Supremo ha expresado que el Estado, a través de sus leyes, es quien único puede otorgar o privar a un tribunal de jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño, supra; Unisys v. Ramallo Brothers,* 128 DPR 842, 862 esc. 5, 1991 Juris P.R. No. 69 (1991).

Así pues, para privar a un tribunal de jurisdicción, es necesario que algún estatuto lo disponga expresamente o que surja de él por implicación necesaria. *Báez Rodríguez et al. v. E.L.A.,* 179 DPR 231, 241, (2010). La falta de jurisdicción sobre la materia acarrea las siguientes consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Beltrán Cintrón et al. v. ELA et al., supra,* en las págs. 101-102. Véase También, J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 1era Ed. 25. (2010).

**C. Plan de Ajuste y *Confirmation Order***

Luego de que el Gobierno realizara una petición de quiebra, al amparo del Título III de PROMESA, el 18 de enero de 2022, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó el Plan de Ajuste Fiscal (en adelante, ¨Plan de Ajuste) que presentó el Gobierno de Puerto Rico y que fue certificado por la Junta de Supervisión Fiscal. Para ello emitió, como parte del caso *In re Commonwealth of Puerto Rico,* Case. No. 17BK3283-LTS, el *Order and Judgment Confirming Modified Eighth Amended Title III Joint*

*Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (*en adelante, ¨*Confirmation Order*¨). El Plan de Ajuste adquirió efectividad el 15 de marzo de 2022.

El Plan de Ajuste define las reclamaciones procedentes de una acción de expropiación forzosa como:

> 1.212 **Eminent Domain/Inverse Condemnation Claim:** A Claim arising from or related to (a) an Eminent Domain Proceeding and a Final Order entered therein for an amount in excess of the amount deposited by the condemnor in accordance with the terms and provisions of 32 L.P.R.A. § 2907, including, without limitation, interest accrued with respect thereto, or (b) an asserted inverse condemnation of property caused by an asserted taking of property for public use by one of the Debtors without due process of law and without having received just compensation, including, without limitation, through the imposition of development restrictions or use limitations.

A su vez, define las acciones de expropiación forzosa como:

> 1.213 **Eminent Domain Proceeding:** A condemnation action or proceeding commenced by the Commonwealth or an agency or entity thereof in the Court of First Instance in accordance with the terms and provisions of 32 L.P.R.A § 2905 to obtain title to real property located on Puerto Rico.

Por otro lado, el párrafo 58.1 establece el tratamiento que se le otorgará a las reclamaciones de expropiación forzosa bajo el Plan de Ajuste. Dispone:

> **PROVISIONS FOR TREATMENT OF CW EMINENT DOMAIN CLAIMS (CLASS 54)**
>
> 58.1 **Treatment of Eminent Domain Claims:** From and after the Effective Date, (a) to the extent not modified prior thereto, the automatic stay extant pursuant to section 362 of the Bankruptcy Code shall be deemed modified in order to permit the holder of an Eminent Domain/Inverse Condemnation Claim to **(i) liquidate such Eminent Domain/Inverse Condemnation Claim** in such holder's Eminent Domain Proceeding and **(ii) cause the Clerk of the Court of First Instance to distribute to such holder the amount of monies on deposit with the Court of First Instance with respect to the condemned property**, and (b) subject to the entry of the Confirmation Order or the Findings of Fact and Conclusions of Law in respect of the Plan providing **such Claims must be paid in full to the extent they are Allowed Claims for just compensation, upon each such order becoming a Final Order, and upon the occurrence of another Final Order determining the validity and amount of just compensation attributable to an Eminent**

**Domain/Inverse Condemnation Claim, the holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed Eminent Domain/Inverse Condemnation Claim, in Cash, one hundred percent (100%) of such Allowed Eminent Domain/Inverse Condemnation Claim**; provided, however, that, in the event that (x) the Oversight Board appeals from the Confirmation Order and the Findings of Fact and Conclusions of Law regarding the Title III Court's ruling that Allowed Eminent Domain/Inverse Condemnation Claims must be paid in full or otherwise be rendered unimpaired pursuant to the Plan, (y) such appeal is successful, and (z) a Final Order is entered holding that Allowed Eminent Domain/Inverse Condemnation Claims may be impaired, subject to the terms and provisions of Articles LXXVII and LXXXII of the Plan, each holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed Eminent Domain/Inverse Condemnation Claim, and the Reorganized Commonwealth shall make, payments, in Cash, in an amount equal to the pro rata payments to be made to holders of Allowed CW General Unsecured Claims up to the GUC Recovery Cap. (Énfasis suplido).

La intención del párrafo 58.1 es clara. Respecto a las reclamaciones de expropiación forzosa, pretende: (1) levantar la paralización de los procedimientos para continuar los procedimientos hasta que se dicte sentencia y advenga final y firme, de modo que la reclamación advenga líquida; (2) distribuir el dinero consignado en el Tribunal de Primera Instancia; y (3) el pago de las Órdenes Finales que hayan determinado la justa compensación.

En el ámbito federal, el término ¨*liquidate*¨ significa realizar el correspondiente cálculo de lo debido. Sobre lo pertinente, la jurisprudencia federal ha establecido que ¨[a] claim is **liquidated** if it is subject to "ready determination and precision in computation of the amount due.¨ *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982), citando a *In re Bay Point Corp.,* 1 B.C.D. 1635 (Bankr.D.N.J.1975). Además, han esbozado que ¨[t]o liquidate a claim is to determine by agreement or litigation the precise amount of it.¨ *In re Silver, 109 F. Supp. 200 (E.D. Ill. 1952), aff'd, 204 F.2d 259 (7th Cir. 1953),* citando a *Webster's International Dictionary* y *Bouvier's Law Dictionary.*

Respecto al significado de ¨*Final Order*¨, el Plan de Ajuste define el término como:

> 1.253 **Final Order:** An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed, reversed or remanded in part or in full, with no further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under <u>Rule 60 of the Federal Rules of Civil Procedure</u>, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

Cónsono con lo anterior, la jurisprudencia federal define ¨*Final Order*¨ como una que ¨**ends the litigation on the merits and leaves nothing for the court to do but execute the judgment**.¨ <u>*Whitfield v. Municipality of Fajardo*, 564 F.3d 40, 45 (1st Cir. 2009)</u> citando a <u>*Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)</u>. (Énfasis suplido). En otras palabras, una orden no es final si permanecen asuntos post-sentencia a determinar por el Tribunal.

Mediante el párrafo 76 del *Confirmation Order*, la Jueza Laura Taylor Swain dispuso que:

> 76. **Eminent Domain/Inverse Condemnation Claims**. Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, (a) nothing contained in the Plan or this Confirmation Order shall impair or otherwise affect the treatment provided in Class 54 to holders of Allowed Eminent Domain/Inverse Condemnation Claims, **(b) as of the Effective Date, and upon the effective date of a <u>Final Order</u> of a court of competent jurisdiction determining the validity of an amount of just compensation attributable to an Allowed Eminent Domain Claim or Allowed Inverse Condemnation Claim, the holder of such**

**a Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed Eminent Domain/Inverse Condemnation Claim, in Cash, one hundred percent (100%) of such Allowed Eminent Domain/Inverse Condemnation Claim,** and (c) Allowed Eminent Domain/Inverse Condemnation Claims shall not be treated in any way as CW General Unsecured Claims for purposes of distribution. **Nothing in the Plan or this Confirmation Order shall be construed to prevent any determination of just compensation from including, if and to the extent the tribunal deems appropriate, interest on an Allowed Eminent Domain/Inverse Condemnation Claim.** Notwithstanding the foregoing, in the event that (x) the Oversight Board appeals from the Confirmation Order and the Findings of Fact and Conclusions of Law regarding the Title III Court's ruling that Allowed Eminent Domain/Inverse Condemnation Claims must be paid in full or otherwise be rendered unimpaired pursuant to the Plan, (y) such appeal is successful, and (z) a Final Order is entered holding that Allowed Eminent Domain/Inverse Condemnation Claims may be impaired, subject to the terms and provisions of Articles LXXVII and LXXXII of the Plan, **each holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed Eminent Domain/Inverse Condemnation Claim**, and the Reorganized Commonwealth shall make, payments, in Cash, in an amount equal to the pro rata payments to be made to holders of Allowed CW General Unsecured Claims up to the GUC Recovery Cap. (Énfasis suplido).

Por otro lado, el párrafo 77.1 del Plan de Ajuste recoge las provisiones que gobiernan las distribuciones al amparo del referido Plan. En lo pertinente a las distribuciones en las reclamaciones de expropiación forzosa dispone:

**PROVISIONS GOVERNING DISTRIBUTIONS**
77.1 **Time and Manner of Distribution**: Except as otherwise provided herein, distributions under the Plan shall be made to each holder of an Allowed Claim as follows:
[…]
(e) **Distributions with respect to Eminent Domain/Inverse Condemnation Claims:** Except as otherwise provided herein, **within ten (10) Business Days following the occurrence of a Final Order determining the validity and amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Eminent Domain/Inverse Condemnation Claim, Cash in the amount of such Allowed Claim**. […] (Énfasis suplido).

La disposición claramente establece que la distribución de la compensación en un caso sobre expropiación forzosa, que contenga

una Orden Final, será ordenada por el ¨*Disbursing Agent*¨. El Plan

de Ajuste define el término ¨*Disbursing Agent*¨ como:

> 1.204 **Disbursing Agent:** Such Entity or Entities designated by the Oversight Board, upon consultation with AAFAF, on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan.

A esos efectos, el *Confirmation Order establece que:*

> 35. <u>Disbursing Agent</u>. Pursuant to section 1.204 of the Plan, the Disbursing Agent shall be, as applicable, such Entity or Entities designated by the Oversight Board, upon consultation with AAFAF, on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan and this Confirmation Order. Upon designation thereof, the Oversight Board shall file an informative motion with the Title III Court setting forth the name of the Disbursing Agent designated.

Relativo a la jurisdicción de la Corte Título III, el Plan de Ajuste

establece que retendrá jurisdicción en determinadas circunstancias.

En lo pertinente, el párrafo 91.1 dispone:

### RETENTION OF JURISDICTION

> 91.1   Retention of Jurisdiction: **The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in, or related to, the Title III Cases and the Plan, or that relates to the following:**
>
> **(a) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim not compromised or settled hereby, including, without limitation, the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims not compromised or settled hereby**; [...]
>
> (c) **to ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan**; [...]
>
> (g) to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents; [...]. (Énfasis suplido).

En otras palabras, la Corte Título III retiene jurisdicción

exclusiva para garantizar que las distribuciones a los titulares de

Reclamaciones Permitidas se realicen de conformidad con el Plan de Ajuste. Además, retiene jurisdicción para resolver las disputas relacionadas a las distribuciones según lo establecido en el Plan de Ajuste. El inciso (c) del párrafo 91.1 expresamente establece que la Corte Título III solo retendrá jurisdicción para velar por el cumplimiento de lo dispuesto en el Plan de Ajuste referente a las distribuciones y para resolver disputas que surjan relacionadas a las mismas. No obstante, no retiene jurisdicción para realizar las correspondientes distribuciones. Según el párrafo 77.1 del Plan de Ajuste, las distribuciones serán realizadas por el *Disbursing Agent.*

## III.

En síntesis, los peticionarios alegan que incidió el TPI al declarar que carecía de jurisdicción para ordenar el pago de la justa compensación determinada mediante *Sentencia* del 9 de febrero de 2015 y para determinar los intereses y costas del pleito.

El 18 de enero de 2022 la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico confirmó la Octava Enmienda al Plan de Ajuste Fiscal. La Octava Enmienda al Plan de Ajuste únicamente permite la continuación de los procedimientos de los casos de expropiación forzosa que quedaron paralizados hasta tanto se dicte sentencia final y firme, de modo que la reclamación advenga líquida y para permitir la distribución de los fondos que ya están consignados en el Tribunal.

Surge del presente caso que, aunque existe una *Sentencia* final del 9 de febrero de 2015, lo cierto es que no se ha consignado la totalidad de la justa compensación, según dispone la referida Sentencia. Tampoco se encuentran consignados, y existe disputa con relación a, los intereses que deberán ser pagados y las costas del pleito.

Por lo anterior, no procede ninguna de las dos modificaciones establecidas en el Artículo LVIII, párrafo 58.1, de la Octava Enmienda al Plan de Ajuste, *supra.* Por tanto, el TPI actuó correctamente al declararse sin jurisdicción para atender la solicitud de la parte apelante para que se ordenara al ELA a consignar y desembolsar el pago de la Sentencia.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *Certiorari* y confirmamos la *Resolución* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones